UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FARM CREDIT SERVICES OF AMERICA, PCA,<br><br>Plaintiff,<br><br>v.<br><br>STEVEN SINGH SAMRA, individually and as trustee of The Steven Singh Samra Revocable Trust; and TRANQUILITY PISTACHIO, LLC, a limited liability company,<br><br>Defendants. | No. 2:20-cv-01142-TLN-DB<br><br>**ORDER** |

      This matter is before the Court on Farm Credit Services of America, PCA's ("Plaintiff") *Ex Parte* Application for a Writ of Possession and Seeking a Turnover Order and Private Place Order, or, in the alternative, Motion for Temporary Restraining Order. (ECF No. 6.) After carefully considering Plaintiff's briefing and for the reasons set forth below, the Court hereby GRANTS Plaintiff's Motion for Temporary Restraining Order and further orders Defendants to file any opposition to the application for writ of possession within ten (10) days of electronic filing of this Order.

///

///

1

### I.     FACTUAL AND PROCEDURAL BACKGROUND

On August 31, 2018, September 10, 2018, September 12, 2018, September 25, 2018, and January 25, 2019, Plaintiff issued five separate loans to Defendant Steven Singh Samra ("Samra") on behalf of Defendant The Steven Singh Samra Revocable Trust and Defendant Tranquility Pistachio, LLC ("Tranquility") (jointly, "Defendants") for the purchase of various items of farm equipment.  (ECF No. 1 at ¶¶ 10, 24, 38, 51, 65.)  These loans were secured by granting Plaintiff a first priority interest in the equipment purchased with the loan.  (*Id.* at ¶¶ 14, 28, 42, 55, 69.)  Ultimately, Defendants defaulted on the loans and filed for Chapter 12 bankruptcy on January 13, 2020. (Id. at ¶ 4.)  Plaintiff asserts Tranquility failed to list the equipment in its bankruptcy schedules as part of its bankruptcy estate, concealing it from their creditors.  (ECF No. 6-2 at 3.)  Plaintiff was granted relief from the automatic stay in the bankruptcy proceeding.  (ECF No. 6-3 at 109–103.)

Plaintiff filed its Complaint on June 5, 2020, alleging breach of contract, claim and delivery, and conversion regarding the five loans issued to Defendants for the purchase of various pieces of farm equipment.  (ECF No. 1.)  On June 10, 2020, Plaintiff filed the instant *Ex Parte* Application for a Writ of Possession, a Turnover Order, and a Private Place Order, or, in the alternative, a Temporary Restraining Order ("TRO") pending a hearing on the application for writ of possession.[1]  (ECF No. 6.)  Plaintiff asserts there is an immediate danger that the equipment will become unavailable for levy because: (1) there is no insurance for the equipment; (2) Tranquility never notified Plaintiff of its bankruptcy filing; (3) Tranquility never listed the equipment in its bankruptcy schedules; (4) Defendants moved the equipment without advising Plaintiff against the terms of the loans; (5) Plaintiff was unable to locate the equipment when given access to the property where it was located; (6) Samra only disclosed the location of the equipment after being deposed; and (7) Samra disclosed at deposition that some of the equipment had been stolen, but never reported it as lost to Plaintiff.  (ECF No. 6-2 at 3.)

///

---

[1]     Plaintiff seeks a writ of possession only in regard to four of the five underlying loans.  The September 25, 2018 loan is not at issue in this application.

Plaintiff estimates that the collateral equipment may be worth up to $352,962.40 and that Defendants owe over $388,000 on the loans at issue in the instant Application. Plaintiff lists the collateral for the loans as follows:

| Collateral Description | Serial Number |
|---|---|
| 2012 COE C-7 Tree Shaker | T04039D573087 |
| 2012 COE C-7 Tree Shaker | T04039D548601 |
| 2018 Weldcraft BD40 Bin Dumper | BD-40-18 |
| Weldcraft BD41 Bin Dumper | BD-41-18 |
| Weldcraft BD42 Bin Dumper | BD-42-18 |
| 2018 Ram 2500 pickup truck | 3C6UR5NL8JG322820 |
| Caterpillar D7F-93N Bulldozer | 8A438 |
| Caterpillar D6D-SA Bulldozer | 5X3871986 |
| 2010 Wilcox PRF 3-60 Performer HD Bedder | 7016 |
| 2007 Wilcox PRF 3-60 HD Performer Bedder | 0091 |

## II.   STANDARD OF LAW

Under Federal Rule of Civil Procedure 64, "[a]t the commencement of and during the course of an action, all remedies providing for seizure of person or property for the purpose of securing satisfaction of the judgment ultimately to be entered in the action are available under the circumstances and in the manner provided by the law of the state in which the district court is held, existing at the time the remedy is sought." Fed. R. Civ. P. 64.

"California's Claim and Delivery Law (Code of Civ. Proc., §§ 511.010–516.050) authorizes the issuance of a pre-judgment writ of possession for specific personal property." *Sea Rail Truckloads, Inc. v. Pullman, Inc.*, 131 Cal. App. 3d 511, 514 (Ct. App. 1982). A plaintiff may bring an application for a writ of possession upon the filing of the complaint or at any time thereafter. Cal. Civ. Code § 512.010(a). The application must include:

3

>   (1) A showing of the basis of the plaintiff's claim and that the plaintiff is entitled to possession of the property claimed. If the basis of the plaintiff's claim is a written instrument, a copy of the instrument shall be attached.
>
>   (2) A showing that the property is wrongfully detained by the defendant, of the manner in which the defendant came into possession of the property, and, according to the best knowledge, information, and belief of the plaintiff, of the reason for the detention.
>
>   (3) A particular description of the property and a statement of its value.
>
>   (4) A statement, according to the best knowledge, information, and belief of the plaintiff, of the location of the property and, if the property, or some part of it, is within a private place which may have to be entered to take possession, a showing that there is probable cause to believe that such property is located there.
>
>   (5) A statement that the property has not been taken for a tax, assessment, or fine, pursuant to a statute; or seized under an execution against the property of the plaintiff; or, if so seized, that it is by statute exempt from such seizure.

Cal. Civ. Proc. Code § 512.010 (West)

California Civil Code § 512.020(b) provides, in relevant part, that a writ of possession may be issued *ex parte* if probable cause appears that the "defendant acquired possession of the property in the ordinary course of his trade or business for commercial purposes" and:

>   (i) The property is not necessary for the support of the defendant or his family; and
>
>   (ii) There is an immediate danger that the property will become unavailable to levy by reason of being transferred, concealed, or removed from the state or will become substantially impaired in value by acts of destruction or by failure to take care of the property in a reasonable manner; and
>
>   (iii) The *ex parte* issuance of a writ of possession is necessary to protect the property.

Cal. Civ. Proc. Code § 512.020(b)(3).

Additionally, a plaintiff may apply for a TRO at or after the time he files his application for writ of possession. Cal. Code Civ. Pro. § 513.010(a). The TRO may be granted *ex parte* if all of the following are found:

///

> (1) The plaintiff has established the probable validity of his claim to possession of the property.
>
> (2) The plaintiff has provided an undertaking as required by Section 515.010.
>
> (3) The plaintiff has established the probability that there is an immediate danger that the property claimed may become unavailable to levy by reason of being transferred, concealed, or removed or may become substantially impaired in value.

Cal. Code Civ. Pro 513.010(b).

### III.    ANALYSIS

#### A.    Application for Writ of Possession

Plaintiff asserts it is entitled to a writ of possession on an *ex parte* basis pursuant to Cal. Civ. Code § 512.020.  However, "[a]n *ex parte* writ of possession is a drastic remedy which is disfavored except in the narrowly drawn, exigent circumstances set forth in this statute.  The California Supreme Court stated in *Blair v. Pitchess* (1971) 5 Cal.3d 258, that an *ex parte* writ of possession can issue only if it is justified by weighty state or creditor interests." *Sea Rail Truckloads, Inc. v. Pullman, Inc.*, 131 Cal. App. 3d 511, 515–16 (Ct. App. 1982).  The statute itself requires Plaintiff to establish probable cause that "[t]he *ex parte* issuance of a writ of possession is necessary to protect the property."  Cal. Civ. Code § 512.040(b)(3)(iii).  Plaintiff has not provided sufficient evidence that a TRO would not be sufficient to protect its interest in the collateral equipment.  Indeed, Plaintiff cites essentially the same facts in support of the request for a TRO as it does for the application for writ of possession.  The imposition of a TRO would be sufficient in the short term to protect Plaintiff's interests without the drastic remedy of granting a writ of possession before Defendants have the opportunity to oppose.

#### B.    Temporary Restraining Order

In the alternative to a writ of possession, Plaintiff seeks a TRO ensuring that the collateral equipment is not sold, transferred, destroyed, removed, or otherwise made unavailable.  In order to issue a TRO under Cal. Civ. Code § 513.010, the Court must find: (1) the Plaintiff has established the probable validity of his claim; (2) the Plaintiff has provided an undertaking or has established that one is not necessary; and (3) there is a probability that there is an immediate

5

1   danger the property may become unavailable.  These factors roughly correspond to the federal

2   standard for granting TROs and preliminary injunctions: (1) that plaintiff is likely to succeed on

3   the merits; (2) that plaintiff is likely to suffer irreparable harm in the absence of preliminary

4   relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public

5   interest."  *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).

                *i.*       *Probable Validity of the Claim*

7         Plaintiff attaches the loan documents associated with the loans at issue to the instant

8   application.  These documents include the Promissory Note, Loan Agreement, and Security

9   Agreement for the August 31, 2018, September 10, 2018, September 25, 2018, and January 25,

10  2019 loans.  (ECF No. 6-3 at 22–72.)  Under the terms of these agreements, Defendants agreed to

11  repay the principal balance plus interest on the outstanding principal.  (*Id.*)  The agreements

12  further indicate that, upon default, the interest rate would increase, and late charges may be

13  assessed when any scheduled payment is past due.  (*Id.*)  To secure the loan, Defendants granted

14  Plaintiff a first priority interest in the listed collateral for each loan.  (*Id.*)

15        Defendants defaulted on each loan between September 1, 2019 and February 1, 2020.  On

16  November 7, 2019, Plaintiff sent a notice of default to Defendants.  (ECF No. 6-3 at 73–75.)  On

17  January 6, 2020, Plaintiff sent Defendants a Notice of Acceleration, notifying Defendants of

18  Plaintiff's election to declare the unpaid balance of the loans immediately due and payable as

19  allowed under the loan agreements.  (ECF No. 6-3 at 76–78.)  Despite these notices, Defendants

20  have not paid the amounts due under the loans.

21        As of June 9, 2020, Plaintiff alleges Defendants owe the following amounts on each loan:

22        August 31, 2019 Loan Agreement:

23            a. Unpaid principal in the amount of $159,510.00; plus

24            b. Accrued interest in the amount of $20,297.64; and

25            c. Late charges in the amount of $743.64.

26        September 10, 2018 Loan Agreement:

27            a. Unpaid principal in the amount of $19,119.72; and

28            b. Accrued interest in the amount of $1,484.60.

1       September 25, 2018 Loan Agreement:

2           a. Unpaid principal in the amount of $54,876.68; and

3           b. Accrued interest in the amount of $3,848.85.

4       January 25, 2019 Loan Agreement:

5           a. Unpaid principal in the amount of $111,906.64; plus

6           b. Accrued interest in the amount of $8,498.74.

(ECF No. 6-3 at 80.) In total, Plaintiff claims Defendants owe $380,286.51.[2] (*Id.*)

      The evidence submitted by Plaintiff is substantial and supports its claim to recover the property in question. Based on the loan documents and declarations, there is a high probability that this claim is valid. In other words, Plaintiff is likely to succeed on the merits of its Application. Therefore, Plaintiff has met its burden in establishing this first element.

                *ii.*     *Undertaking*

      California Civil Code § 513.010 requires the plaintiff seeking a TRO to provide an undertaking as required in Cal. Civ. Code § 515.010. Section 515.010 in turn instructs the court to waive the requirement of an undertaking if the court finds that the defendant has no interest in the property. Plaintiff submits the declaration of Michael Spence wherein he attests that the total value of the equipment Plaintiff seeks to reclaim as collateral for the loans is $352,962.40. (ECF No. 6-3 at 18–20.) This valuation is based on the purchase price and an estimated percentage reduction for depreciation based on the acquisition date. As discussed above, Plaintiff asserts Defendants owe it $380,286.51 as of June 9, 2020. Because the amount owed to Plaintiff is more than the value of the collateral, Defendants have no remaining interest in those items. Therefore, Plaintiff need not provide an undertaking for this Court to issue the requested TRO. Even without the undertaking, the balance of the equities weighs in Plaintiff's favor. Should the equipment become unavailable to Plaintiff, it will have a limited ability to recover the amounts due on the loans. However, issuing the TRO will simply enforce the status quo, preventing Defendants from

---

[2] This number represents the sum of the amounts indicated above, however, elsewhere in Plaintiff's briefing it indicates Defendants owe "in excess of $388,000." (ECF Nos. 6-2 at 2; 6-3 at 20.)

7

selling or otherwise disposing of the equipment.  Plaintiff has therefore met its burden under the second element for issuing a TRO under Cal. Civ. Code § 513.010(b).

### iii.     Probability of Immediate Danger

California Civil Code § 513.010(b) requires Plaintiff to make a showing that there is a substantial and immediate danger "that the property claimed may become unavailable to levy by reason of being transferred, concealed, or removed or may become substantially impaired in value."  Cal. Civ. Proc. Code § 513.010(b)(3).  Plaintiff asserts a number of factors indicating there is an immediate danger of loss or damage to the collateral property.  While some of these factors, including not acquiring insurance on the equipment in question, are simply violations of the loan agreement, other factors — such as the movement of the equipment to new locations without informing Plaintiff — raise significant concerns that Defendants might dispose of or hide the collateral.  Of particular concern to the Court is Samra's deposition testimony that some of the equipment has already been stolen.  (ECF No. 6-5 at 19–20.)  Samra also failed to disclose the identity of the individuals who had possession of the bulldozer and "bedder."  (ECF No. 6-5 at 9–10.)  These incidences, when considered in light of Defendant Tranquility Pistachio's failure to list this debt in its bankruptcy schedules, indicate a desire to hide or otherwise impair Plaintiff's ability to reclaim the equipment.

This element corresponds to the federal TRO application requirement that a plaintiff show it is likely to suffer irreparable harm in the absence of preliminary relief.  *Winter*, 555 U.S. at 22.  Defendants' actions and attempts to conceal their debt to Plaintiff and hide the collateral show that Plaintiff is in danger of losing access to the property it is seeking to repossess.  Should this property become unavailable, Plaintiff is highly unlikely to be able to recover the money it loaned Defendants, especially considering Defendant Tranquility's bankruptcy.

Plaintiff has therefore made a sufficient showing that there is a probability of immediate danger, and that it is likely to suffer irreparable harm, to warrant the issuance of a TRO pending the resolution of the application for writ of possession.[3]

---

[3]     The final federal element required in an application for TRO is a showing that an injunction is in the public interest.  *Winter*, 555 U.S. at 22.  While not a required element under

### IV. CONCLUSION

For the reasons set forth above, Plaintiff's Motion for TRO (ECF No. 6) is GRANTED. Defendants and their agents are hereby enjoined from transferring any interest in the property referred to in this Order by: sale, pledge, or grant of security interest or otherwise disposing of or encumbering it; concealing or otherwise removing the property in such a manner as to make it less available to seizure by the levying officer; impairing the value of the property either by acts of destruction or by failure to care for the property in a reasonable manner. No bond shall be required.

Defendants are further ordered to file any opposition to Plaintiff's Application for Writ of Possession, a Turnover Order, and a Private Place Order within ten (10) days of the electronic filing of this order. Plaintiff shall file any reply not later than five (5) days after Defendants file their opposition. This matter will then be considered submitted on the briefs. If the Court determines Plaintiff is not entitled to a writ of possession, the TRO shall be dissolved; otherwise, the Court will issue a preliminary injunction to remain in effect until the property claimed is seized pursuant to the writ of possession.

IT IS SO ORDERED.

DATED: June 22, 2020

Troy L. Nunley
United States District Judge

---

the California law, it is nonetheless met here. Issuing a TRO wherein a lender is attempting to secure the collateral on a defaulted loan supports the lending industry and gives lenders confidence that, should a borrower default, there is still recourse to recover money owed. This, in turn, encourages lenders to continue lending money and for borrowers to be able to secure the loans necessary in their businesses and lives. Therefore, issuing the TRO in this case is in the interest of the public.